Corrigan, J.
(dissenting). This case involves a dispute between plaintiff Gulf Underwriters Insurance Company (Gulf) and defendant McClain Industries and several other affiliated corporate defendants (the McClain defendants). Gulf issued four liability insurance policies to the McClain defendants, each of which included a self-insured retention endorsement (SIR endorsement). The SIR endorsement of each contract provided, in part:
In consideration of the premium charged, it is hereby agreed that such coverage as is afforded by this policy shall be excess of a 250,000 Self-Insured Retention [for] each “claim.” It is also agreed that all expenses and costs under the Supplementary Payments section stated in the Coverage Form (Section 1) shall contribute to the exhaustion of the 250,000 Self-Insured Retention Limit and all such expenses and costs shall be entirely borne by the insured.
All the terms of the policy including, but not limited to, those with respect to notice of “claim” or “suit” and the Company’s right to investigate, negotiate, defend and settle any “claim” apply irrespective of the application of the Self-Insured Retention.
The Company may, but is not obligated to, pay all or part of the Self-Insured Retention to effect settlement of any “claim,” “suit” or expense. Upon notification of the action taken, the insured shall promptly reimburse the Company for such Self-Insured Retention amount paid by the Company[.]
The Self-Insured Retention obligation to this contract shall be considered to be an executory contract under all circumstances and payments on this obligation shall be paid by the insured. Failure to make the payment entitles the insurer to terminate the contractual obligation between the parties as a failure to the Self-Insured, Retention endorsement is a material breach to the entire contract. In the event of a bankruptcy filing, the contract is deemed executory as under 11 U.S.C. 365, and the payments of the self-insured retention shall be made on a monthly basis and treated as an administrative expense under 11 U.S.C. 507(a)(1). [Emphasis added.]
In addition, Section IV of the policies (“COMMERCIAL GENERAL LIABILITY CONDITIONS”), provided, in part:
1. Bankruptcy
Bankruptcy or insolvency of the insured or of the insured’s estate will not reheve us of our obligations under this Coverage Part.
*1013 Defendant David Cook filed a products liability action against the McClain defendants, and defendant Daniel Berg notified the McClain defendants that he also intended to sue. After the McClain defendants asserted an inability to pay the SIR endorsement because of their insolvency, Gulf sought a declaratory judgment that it was not obligated to provide coverage because of the McClain defendants’ failure to comply with the SIR endorsement.[1] The trial court granted summary disposition in favor of Gulf, holding that Gulf had no obligation to defend or indemnify the McClain defendants because of their failure to pay the SIR endorsement. It also awarded Gulf defense costs. The Court of Appeals affirmed the award of defense costs but reversed the trial court’s grant of summary disposition in favor of Gulf. It concluded that “the insolvency provision provides an exception to the requirement that McClain Industries must satisfy the SIR endorsement limit before Gulf Underwriters is required to defend and indemnify defendants.” Gulf Underwriters Ins Co v McClain Industries, Inc, unpublished opinion per curiam of the Court of Appeals, issued August 5, 2008 (Docket No. 273768), at 3.
I dissent from this Court’s order denying Gulfs application for leave to appeal. There is a strong argument that under the SIR endorsement, Gulf had no obligation to provide coverage because the McClain defendants failed to pay the SIR endorsement. The McClain defendants obtained favorable pricing on their general liability insurance policy with Gulf by agreeing to the large self-insured retention. Under the endorsement, the failure of the McClain defendants to make the retention payment “entitles the insurer to terminate the contractual obligations of the parties as a failure to the Self-Insured Retention is a material breach as to the entire contract.” It appears that the bankruptcy or insolvency provision of the parties’ contract merely clarifies that the McClain defendants’ insolvency does not relieve Gulf of its contractual obligations. If this is correct, the bankruptcy or insolvency provision does not, as the Court of Appeals opinion suggests, alter those obligations in the event of bankruptcy or insolvency. Indeed, the SIR itself contemplates the possibility of bankruptcy by providing that, “[i]n the event of a bankruptcy filing, the contract is deemed executory under 11 U.S.C. 365 and the payments of the Self-Insured Retention shall be made on a monthly basis and treated as an administrative expense under 11 U.S.C. 507(a)(1).” This provision suggests that the bankruptcy or insolvency provision may not be, as the Court of Appeals held, an “exception” to the SIR endorsement. Gulf Underwriters Ins Co, supra at 3.
Another reason favoring a grant of leave to appeal is that this case presents an issue of contractual interpretation that is likely to recur. MCL 500.3006 provides:
*1014 In such liability insurance policies there shall be a provision that the insolvency or bankruptcy of the person insured shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, then an action in the nature of a writ of garnishment may be maintained by the injured person, or his or her personal representative, against such insurer under the terms of the policy for the amount of the judgment in the said action not exceeding the amount of the policy. [Emphasis added.]
The Court of Appeals in this case held that Gulf was not subject to MCL 500.3006 because Gulf is a “ ‘surplus lines carrier,’ i.e., an insurer that is not authorized by the state insurance commissioner to transact insurance in the state of Michigan.” Gulf Underwriters Ins Co, supra at 4. Even assuming the Court of Appeals is correct that the requirement is inapplicable to Gulf,[2] this statute ensures that bankruptcy provisions similar to the one at issue here will appear in many insurance contracts because they are required in insurance contracts that are subject to the code.[3] Because I would grant leave to consider this jurisprudentially significant issue of contract interpretation, I respectfully dissent from the Court’s order denying leave to appeal.
Markman, J. I join the statement of Justice CORRIGAN.

 As Justice Young points out, Gulf did not attempt to terminate or cancel the contract. Instead, it filed this declaratory judgment action to clarify its obligations under the contract. I do not find Gulfs failure to terminate the contract significant in light of its filing of this declaratory judgment action.

 In his response to Gulfs application for leave to appeal, defendant Berg argues, as defendant Cook did in the Court of Appeals, that MCL 500.3006 precludes Gulf from denying coverage because of the McClain defendants’ insolvency.

 Justice Young misses the jurisprudential significance of this case by taking the unnecessarily narrow view that the only issue it presents is the meaning of bankruptcy or insolvency provisions in contracts not subject to the Insurance Code. My point is that, because of MCL 500.3006, bankruptcy or insolvency provisions similar to the one at issue here will be common in contracts that are controlled by the Insurance Code. That the contract at issue here may not have been required to include the bankruptcy or insolvency provision under the Insurance Code does not diminish the jurisprudential significance of this case.